Wesenberg Case.

Argued January 26, 1943. Before MAXEY, C. J.; DREW, LINN, PATTERSON, PARKER and STEARNE, JJ.

*Herbert J. Hartzog,* for appellant.

*H. P. McFadden,* for appellee.

*George J. Barco,* Deputy Attorney General, and *E. Russell Shockley,* Attorney General, for Commonwealth, intervenor.

OPINION BY MR. JUSTICE PARKER, March 22, 1943:

The prime and controlling question involved in this appeal is whether the proposed transfer of E. E. Wesenberg from the position of principal of a six-year junior-senior high school to the principalship of a three-year junior high school in the city of Bethlehem was a demotion within the meaning of the Act of April 6, 1937, P. L. 213, §3 (24 PS §1161), an amendment to the School Code.

Mr. Wesenberg, prior to 1939, had been a teacher in the Bethlehem public schools. In June, 1939, he was

elected to the principalship of the Liberty High School for the school year 1939-1940. That high school was classed for that school year by the Department of Public Instruction as a six-year junior-senior high school. His salary was increased to $3,000, the statutory minimum for secondary school principals in school districts of the second class. Liberty High School was not at that time on the accredited list of the Middle States Association of Colleges and Secondary Schools; it was badly over-crowded and had a high ratio of pupils to teachers, large classes, and inadequate study hall facilities. In May, 1940, on the advice of the Department of Public Instruction, the school board took steps to remove the seventh, eighth, and ninth grades from Liberty High School and establish a junior high school in another building known as Franklin Building.

On July 26, 1940, the school board adopted a resolution assigning the appellee to the principalship of the proposed new school; it so notified the appellee and tendered him a new contract in prescribed statutory form at a salary of $3,125, including the increment to which he was entitled as a principal. Appellee refused to sign the new contract and declined to accept the assignment to the new junior high school, contending that the action of the board was a demotion. The board then notified appellee that his failure to assume his new assignment would be regarded as insubordination and persistent neglect of his duties. On March 28, 1941, formal charges were preferred against him.[1] These were sustained and the appellee was discharged. An appeal was taken to the Superintendent of Public Instruction and an order was made affirming the action of the school board. Thereupon Mr. Wesenberg took an appeal to a court of common pleas which reversed the action of the

---

[1] Appellee had, in the meantime, by a writ of alternative mandamus unsuccessfully attempted to compel the board to pay his salary. See Com. ex rel. Wesenberg v. Bethlehem School District, 148 Pa. Superior Ct. 250, 24 A. 2d 673.

Superintendent of Public Instruction. The school district has now appealed to this court.

The court of common pleas, in reversing the Superintendent of Public Instruction, gave some consideration to the question of demotion but based its conclusions largely on the grounds that at the time of the proposed transfer the Franklin Junior High School was only a paper school not yet legally in existence and that the acceptance of the new position and execution of the new contract would have affected the seniority rights of appellee adversely. As we regard these grounds to be without merit, we will first consider the question of demotion.

If the new assignment was a proper one, failure to undertake it constituted a valid ground for his dismissal: *Ganaposki's Appeal*, 332 Pa. 550, 555, 2 A. 2d 742. The amendment dealing with tenure of office (24 PS §1161) provides that "there shall be no demotion of any professional employe, either in salary or in type of position, without the consent of the said employe, or if such consent is not received, then such demotion shall be subject to the right to a hearing before the Board of School Directors (or Board of Public Education), and an appeal in the same manner as hereinbefore provided in the case of the dismissal of a professional employe." Appellee did not invoke that remedy and ask for a hearing on the question of demotion. If he had done so and at the same time assumed the new assignment until final disposition of the question, he could have safeguarded his rights under the statute and avoided the risk of dismissal. He chose to refuse to assume any duties as principal of the new high school, although holding himself ready, willing, and able to act as principal of the Liberty High School.

The statute refers to demotion in respect to salary and type of position. The minimum salary fixed by the statute and the amount offered Mr. Wesenberg being the same, that question passes out of the case. This seems to be the first time that the meaning of demotion in type

of employment as used in the School Code has been before this court, although in *Smith v. Phila. School District,* 334 Pa. 197, 205, 5 A. 2d 535, where we were discussing demotion in salary, we said : "The word 'demotion' as used therein means a reduction of particular teachers in salary or in type of position as compared with other teachers having the same status."

Much of the voluminous testimony of so-called experts as to the meaning of demotion as used in the School Code is of little, if any, value. It is a question of law that is involved and it is necessary to determine the meaning of "demotion" as used in the School Code, of which the tenure provision is but a part. The expert testimony of appellee's witnesses was to a large extent predicated on how a change of position might affect the sensibilities or peculiar tastes or talents of an individual teacher rather than on what the legislature intended. The extent to which the opinions expressed and the reasons given for such opinions went is illustrated by testimony on behalf of appellee that Liberty High School building, with its up-to-date gymnasium, swimming pool, and athletic contests, was so far in advance of the surroundings at the Franklin building that it would be a demotion to act as principal in the old building.

From an examination of the School Code as applied to the facts, we are all of one mind that this was not a demotion as that term was used in the statute. The School Code recognizes main divisions of common schools into those which deal in elementary instruction and secondary instruction : Act of May 29, 1931, P. L. 210, §1 (24 PS §1224). We are concerned only with professional employees in the latter class. By §1701 of the School Code (24 PS §1581), "a complete high school course is one requiring four years beyond an elementary course of eight years or six years beyond an elementary course of six years." The instruction in the final years may all be given in one building or distributed over several and with or without separate junior and senior high schools.

Turning our attention to the provisions of the code dealing with high schools, it will be seen that there is no distinction in the status of professional employees in junior and senior high schools whether they are conducted in one plant or two or more plants. They are all secondary schools. The minimum prescribed salaries for principals in high schools in districts of the second class, of which Bethlehem is one, are the same. "High school principals who devote one-half or more of their time to supervision and administration, minimum annual salary" $3,000 with minimum annual increments of $125 for eight years: §1210, cl. 5, of School Code (24 PS §1168). Throughout the section the status of teachers and principals in elementary schools is different from the status of those in high schools, but there is no distinction within the high school group.

Under the authority of The Administrative Code, §1307 (j) (71 PS §357), the State Council of Education has the power and duty to promulgate standards for certificates to teach in the elementary and secondary schools of this Commonwealth. The requirements laid down pursuant to such authority are precisely the same for all principals and teachers in secondary schools: Bulletin No. 158.

If tenure acts are to accomplish their dual purposes of assuring continuity of service for faithful labor and providing efficient service to the state gained by experience, the status of employees has a definite relation to qualifications whether demonstrated by examinations or performance in the past. The laying down of the same requirements for all teachers and principals in high schools would indicate that such employment is on a parity. The same reports are required from all high school principals. In fact, we do not find anything in the School Code that marks any distinction between the status of principals in junior and senior high schools.

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by con-

sidering, among other matters . . . (6) the consequences of a particular interpretation . . . (8) legislative and administrative interpretations of such law": Statutory Construction Act of May 28, 1937, P. L. 1019, §51 (46 PS §551). We have the benefit of the interpretation of the Superintendent of Public Instruction and department heads, which construction agrees with our conclusion. We have not only the categorical statements that the status of principals in all high schools is the same, but the reasons given in support of their conclusions are persuasive.

The appellee's witnesses laid much stress on the fact that the senior high school dealt with more advanced pupils than those found in the junior high schools. If this were made a basis of distinction, it would lead to absurd results. If a teacher had been instructing in the twelfth grade and it was desirable to have her teach the same subject in the ninth, tenth, or eleventh grade, the board would not be able to re-assign her because it would be a demotion under the interpretation given by the court below. It will be readily seen that if those in control of the schools are to conduct them for the best interests of the pupils, it is essential that they have some discretion in the assignment of teachers and principals. The construction placed on this law by the court below would, in our opinion, seriously interfere with the efficient conduct of the high school system, and we cannot believe that the legislature intended any such result.

The court below thought that the Franklin Junior High School was non-existent as a junior high school on July 26, 1940, when the appellee received notice of the new assignment; that the school existed only as such in the minds of the board; and that appellee was therefore justified in refusing to serve there. This is to ignore realities. On May 20, 1940, the board adopted a report of its administrative committee recommending that a junior high school be established at the Franklin building and that an architect be employed to design changes.

During the vacation period, appellee was assigned as principal and other teachers were assigned to the new school. On August 12th, the state authorities approved the plans for renovation as required by statute. The school opened on September 11, 1940. All this was done on the recommendation of state officials. While Franklin Junior High School was not classified by the Department of Public Instruction until July, 1941, we find nothing in the statute that requires the prior consent of that department before a junior high school may be set up in a school district of the second class. It is required in fourth class districts: Act of May 18, 1911, P. L. 309, §1701 (24 PS §1581). There was evidence that it was not customary to classify schools for a certain year until near the end of the school year. The assignment of appellee to the new building was made in logical sequence as work progressed. The school was more than a paper school and the steps taken were those normally taken in the opening of a new school. There is a strong presumption that the board was properly performing its functions and taking the steps necessary to give validity to its official acts: *Miners Savings Bank of Pittston v. Duryea Boro.*, 331 Pa. 458, 200 A. 846; *Hibbs v. Arensberg*, 276 Pa. 24, 119 A. 727. Appellee had no grounds to doubt the good faith of the board and subsequent events proved such good faith.

The court below also took the position that if appellee had signed the proffered contract, he would thereby have given up his seniority rights and cited in support of that conclusion *Streibert v. York School District Directors*, 339 Pa. 119, 14 A. 2d 303. In the present case the only difference between the new and old contracts was in the amount of compensation, the new one taking care of the increment to which appellee was entitled under the statute by reason of one year of service as principal. His status as a principal was not changed. The *Streibert* case holds nothing to the contrary. There the teacher was asked to give up her status as a teacher

and accept a lower salary. It was the evident intention of the board to place her on the same basis as employees whose term began at the time she executed the new contract. The implications here are all to the contrary, for the appellee was given the status of an employee and the new contract only provided for the statutory increment. We do not interpret our code as meaning that a new contract in the statutory form merely confirming an increase in salary is a violation of the statute and that by accepting it a teacher loses the seniority rights given him as if he had voluntarily resigned and been hired at a later date. The new contract did nothing more than set forth a right he had by statute and would have had without a new contract.

The order of the court below is reversed and the decision of the Superintendent of Public Instruction is affirmed at the costs of the appellee.