## Coronway Appeal

*Edwin E. Lippincott, 2nd,* for petitioner.

*Frank A. Moorshead,* for respondent.

*Lewis F. Adler,* for Pennsylvania State Education Association, amicus curiæ.

ERVIN, P. J., October 22, 1951.—This is an appeal from the decision of the Superintendent of Public Instruction dismissing an appeal of petitioner from the decision of the Board of School Directors of the School District of Lansdowne Borough, Delaware County, Pa.

The present controversy is a companion case to one filed as of September term, 1950, no. 706, entitled Coronway v. Lansdowne School District, in which present petitioner sought a preliminary injunction to restrain respondent from compelling him to take tickets at a football game without additional compensation. He alleged that he had been threatened with dismissal if he failed to do so. We dismissed the bill on the ground that he should follow the procedure set forth in the Public School Code, which was exclusive: Coronway v. Lansdowne School District, 75 D. & C. 392. Wisely or unwisely, we said in that case:

"Plaintiff argues that the remedy provided by the School Code is not adequate in that it requires him to refuse to perform some assignment before the question of the right of the board to make such assignment can be raised and that he thereby jeopardizes his position in order to be able to raise the question. If this be so, it is unfortunate but it still remains true that the Act of 1806, supra, requires that such procedure shall be exclusive. Without deciding the question, it may be that plaintiff may find relief from his dilemma in Wesenberg Case, 346 Pa. 438. If plaintiff is in a position to claim that the duties assigned him beyond his class instruction duties amount to a demotion, the language in that case might apply. There the court said: 'The amendment dealing with tenure of office (24 PS §1161, now 24 PS §11-1151) provides that "there shall be no demotion of any professional employe, either in salary or in type of position, without the consent of the said employe, or if such consent is not received, then such demotion shall be subject to the right to a hearing before the Board of School Directors (or Board of Public Education), and an appeal in the same manner as hereinbefore provided in the case of the dismissal of a professional employe". Appellee did not invoke that remedy and ask for a hearing on the

question of demotion. If he had done so and at the same time assumed the new assignment until final disposition of the question, he could have safeguarded his rights under the statute and avoided the risk of dismissal'."

As a result, petitioner on November 22, 1950, gave notice to the school board that he considered the assignment to take tickets at a football game to be a demotion in salary and type of position and demanded a hearing. In accordance with his request, there were five hearings held before the board of school directors, which, on March 12, 1951, unanimously decided that petitioner had not been demoted in either salary or type of position. Petitioner appealed to the Superintendent of Public Instruction, who dismissed his appeal and sustained the action of the board of school directors. The notice sent by petitioner to the school board also objected to certain other assignments, such as attending home and school meetings and other duties following the close of the daily session of school and on days when school is not in session but when he was put on the witness stand he testified that he had no objection to activities "connected directly with the formal phase of the school" and only objects to working after the close of the daily session and on Saturdays without pay at activities that are "held to raise money where the audience is made up of anybody that pays to come in."

We feel that such testimony limits petitioner's claim to the assignment to collect football tickets, for this was the only affair specified in the testimony where petitioner was compelled to work at a function where the general public "pays to come in". As we said in our former opinion:

"The question involved in this case extends far beyond the narrow confines of this particular plaintiff and this particular school district. It is a matter of

construction which will affect the duties and compensation of all the school teachers of the Commonwealth because all of them hold similar contracts. It is unfortunate that the legislature itself did not define the duties of a teacher so that questions of this nature would not become the subject of controversy."

It was said in Ganaposki's Case, 332 Pa. 550:

"The statutory form of contract does not define teaching duties or those to which a teacher may be assigned. 'Teach' as thus used has a comprehensive as well as a restricted meaning. The School Code restricts its meaning to instruction within the qualifications expressed in the teacher's certificate; but in a broad sense, it refers to general instruction within the fields certified, including all incidents and subdivisions thereof. Within these qualifications, the discretion of the school authorities is absolute, under the contract, to assign the teacher regardless of prior understandings before his contract was entered into. Neither the teacher nor the board, nor both combined, can circumvent by contract, or otherwise, the statutory right of the board to assign teachers or to administer the school under their control. The Code thus reserves to the board the power to assign the teacher to any duties for which he is properly qualified under his teacher's certificate. . . . When a professional employee is regularly employed to 'teach', thereafter he may be assigned such *teaching* duties for which he is qualified as the board may direct. . . ." (Italics supplied.)

It was, therefore, held that since Ganaposki's teaching certificate included physical education he could be assigned to coach basketball. In the present case petitioner's certificate covered the subjects of social science and physical science only. There are very few cases involving the duty of a teacher to perform services other

than those which pertain to instruction. In 47 Am. Jur. 375, it is said:

"Where a contract of employment fails to define teaching duties, an instructor may be assigned to teach any subject for which he is certified, including any subdivision thereof. Thus, one who has been employed as a teacher of physical education may be required to coach football and basketball. On the other hand, a teacher holding a certificate limited to the teaching of only one subject may not, where her services as a teacher of that subject are no longer needed, be assigned to other duties.

"Whether a teacher may be required to render services other than those pertaining to instruction is dependent upon the contract of employment or upon statutory requirements. Hence, in the absence of a stipulation to the contrary in the contract of employment, a teacher may not be required to perform janitorial work, but, where the school laws provide to that effect, must keep statistics and make reports, in accordance with the terms of the statute."

See also: 56 Corpus Juris 396, §325; 38 A. L. R. 1414.

It is well known and petitioner by his testimony admits that the duties of teachers are professional and cannot be measured with a time clock. Modern day schools are more and more offering to their students opportunities to participate in extracurricular activities, most, if not all, of which broaden the experience and knowledge of the pupils participating therein. The assignment of teachers to supervise such activities is well within the powers of the school boards. However, we cannot see how an assignment to collect tickets at a football game can be considered in such a category. Were petitioner assigned to sit with the students in a cheering section to help to inculcate in them the attributes of loyalty and good sportsmanship, we might

regard such an assignment as having some direct relation to the education of his pupils, but the assignment to sit beside a gate and collect tickets bears no such relation. It is a task which any adult could perform and can only be motivated by the desire of the school board to cut down the expenses of the game. We feel that such an assignment is not within the field which a teacher must perform and to require him to do so is a demotion in type of position.

We are not unmindful that the teacher's contract prescribed by the Public School Code contains the provision: ". . . with the right of the board of school directors (the board of public education) to increase the compensation over the compensation herein stated, from time to time, as may be provided under the provisions and proper operation of the established salary schedule, if any, for the school district" and that the Lansdowne School Board adopted a salary plan for teachers on May 24, 1950, after it had been approved by the teachers by a vote of 56 to 21, and that salary plan for teachers included the following statement:

"It is understood that this salary includes the teaching of a regular schedule, in-service training activities, sponsoring or supervising of class or school activities, coaching, committee and faculty meetings, home visits, field trips and other activities usually considered a part of the teaching load as may be recommended by the supervisory staff of the school and approved by the board."

The only clause in such schedule which could possibly cover collecting of tickets at a football game would be: "other activities usually considered a part of the teaching load."

There is no doubt that for many years the male teachers of the school district have received such assignments, which have been rotated, but we do not feel that the fact that such assignments have been made and

accepted in the past can be used to justify them if they are not reasonable and proper assignments. As we have stated, we do not feel that the assignment in question is within the scope of the teaching duties of a professional employe. It follows that the decision of the Superintendent of Public Instruction must be reversed.

### Order

And now, to wit, October 22, 1951, it is ordered, adjudged and decreed that the decision of the Superintendent of Public Instruction, filed on June 27, 1951, be and the same is hereby reversed.

It is further ordered, adjudged and decreed that the assignment of A. Todd Coronway by the School District of the Borough of Lansdowne, Delaware County, Pa., to collect tickets at a football game on the athletic field of the district on Friday evening, October 20, 1950 (subsequently changed by consent to Saturday afternoon, October 28, 1950) was a demotion of A. Todd Coronway in type of position.