**[J-91-2024] [MO: Donohue, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| JARRETT COLEMAN, | : | No. 33 MAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 1416 |
| | : | CD 2022 dated November 8, 2023, |
| v. | : | Affirming and Reversing the Order of |
| | : | the Lehigh County Court of Common |
| | : | Pleas, Civil Division, at No. 2021 C- |
| PARKLAND SCHOOL DISTRICT, | : | 2666 dated November 17, 2022 |
| | : | |
| Appellant | : | ARGUED:  November 20, 2024 |

*Justice Donohue delivers the Opinion of the Court with respect to Parts I-III, IV.A, IV.D, and V, and an opinion with respect to Parts IV.B and IV.C joined by Justices Dougherty and Mundy.*

**OPINION**

**JUSTICE DONOHUE**                                        **DECIDED:  November 24, 2025**

This case involves the interpretation of Section 712.1 of Pennsylvania's "Sunshine Act."[1]  Failure to include an item of agency business on the pre-meeting agenda generally precludes consideration of that business at the agency's meeting, but the General Assembly provided several exceptions to this rule.  In the matter before us, a school board approved a collective bargaining agreement that was not listed in the meeting's agenda notice.  The Commonwealth Court held that the school board's action violated the

---

[1]  65 Pa.C.S. §§ 701-716.

Sunshine Act. However, because the school board properly invoked an exception to the agenda notice rule, we reverse.

## I. Background

The Sunshine Act came into effect in 1998,[2] and the provisions at issue were the product of a 2021 amendment.[3] It dictates that the deliberations of and official actions taken by agencies "**shall** take place at a meeting open to the public" subject to a few limited exceptions. *Id*. § 704 (emphasis added).[4] Votes at agency meetings on "any resolution, rule, order, regulation, ordinance or the setting of official policy" must be publicly cast and roll call votes are to be recorded. *Id*. § 705. Agencies must keep written minutes of "all open meetings[,]" including the "date, time and place of the meeting[,]" the "names of members present[,]" the "substance of all official actions and a record by individual member of the roll call votes taken[,]" and the "names of all citizens who appeared officially and the subject of their testimony." *Id*. § 706. The Sunshine Act provides comprehensive rules requiring public notice, "at least 24 hours in advance[,]" of the time and place of regularly scheduled, rescheduled, and special meetings. *Id*. § 709(a). Such notice must be provided with sufficient time to allow for publishing or circulation of the notice, *id*. § 709(b), and copies of the notice shall be provided upon request to media outlets operating regularly within the political subdivision where an agency meeting will be held, *id*. § 709(c).

The Sunshine Act also establishes the public's right to participate at certain agency meetings. For meetings of "the board or council of a political subdivision or of an authority

---

[2] *See* Act of October 15, 1998, P.L. 729, No. 93.

[3] *See* Act of June 30, 2021, P.L. 350, No. 65.

[4] None of the exceptions to the open meetings rule delineated in Sections 707, 708, and 712 are implicated in this case.

created by a political subdivision[,]"[5] public participation occurs through a process of public comment or, under certain conditions, at a special meeting for public comments held between regularly scheduled meetings. *Id*. § 710.1(a). Additionally, any person present at these meetings "has the right to raise an objection at any time" based on violations the Sunshine Act, *id*. § 710.1(c), and the right "to use recording devices to record all the proceedings[,]" *id*. § 711.

Under the 2021 amendment, the Sunshine Act also requires public notification of agency business for each agency meeting. *Id*. § 709(c.1). If the agency has a publicly accessible website, "the agency shall post the agenda, which includes a listing of each matter of agency business that will be or may be the subject of deliberation or official action at the meeting, on the website no later than twenty-four hours in advance of the time of the convening of the meeting." *Id*. § 709(c.1)(1)(i) (the "24-hour Notice Rule"). The agency is also required to post the agenda at both the location of the meeting and the principal office of the agency. *Id*. § 709(c.1)(1)(ii). Furthermore, the agency must provide copies of the agenda to all individuals who attend a meeting. *Id*. § 709(c.1)(1)(iii).

The statutory provisions at issue in this case appear as Section 712.1, which provides as follows:

> **§ 712.1. Notification of agency business required and exceptions**
>
> **(a) Official action.--**Except as provided in subsection (b), (c), (d) or (e), an agency may not take official action on a matter of agency business at a meeting if the matter was not included in the notification required under section 709(c.1) (relating to public notice).
>
> **(b) Emergency business.--**An agency may take official action at a regularly scheduled meeting or an emergency meeting on a matter of agency business relating to a real or

---

[5] Agencies that do not fit this description (e.g., the General Assembly) are not governed by the public participation provisions set forth in Section 710.1.

potential emergency involving a clear and present danger to life or property regardless of whether public notice was given for the meeting.

**(c) Business arising within 24 hours before meeting.--**An agency may take official action on a matter of agency business that is not listed on a meeting agenda if:

> (1) the matter arises or is brought to the attention of the agency within the 24-hour period prior to the meeting; and

> (2) the matter is de minimis in nature and does not involve the expenditure of funds or entering into a contract or agreement by the agency.

**(d) Business arising during meeting.--**If, during the conduct of a meeting, a resident or taxpayer brings a matter of agency business that is not listed on the meeting agenda to the attention of the agency, the agency may take official action to refer the matter to staff, if applicable, for the purpose of researching the matter for inclusion on the agenda of a future meeting, or, if the matter is de minimis in nature and does not involve the expenditure of funds or entering into a contract or agreement, the agency may take official action on the matter.

**(e) Changes to agenda.—**

> (1) Upon majority vote of the individuals present and voting during the conduct of a meeting, an agency may add a matter of agency business to the agenda. The reasons for the changes to the agenda shall be announced at the meeting before any vote is conducted to make the changes to the agenda. The agency may subsequently take official action on the matter added to the agenda. The agency shall post the amended agenda on the agency's publicly accessible Internet website, if available, and at the agency's principal office location no later than the first business day following the meeting at which the agenda was changed.

> (2) This subsection shall not apply to a conference or a working session under section 707 (relating to exceptions to open meetings) or

> an executive session under section 708 (relating to executive sessions).
>
> **(f) Minutes.--**If action is taken upon a matter of agency business added to the agenda under this section, the minutes of the meeting shall reflect the substance of the matter added, the vote on the addition and the announced reasons for the addition.

65 Pa.C.S. § 712.1.

## Procedural History

At the Parkland School District ("District") School Board's October 26, 2021 meeting, a board member introduced a motion utilizing Section 712.1(e) ("the Majority Vote Clause") to amend the meeting's agenda to include a vote on whether to approve and authorize the School Board President to execute a collective bargaining agreement ("CBA") between the District and the Parkland Education Association. The CBA included a 2.9% annual salary increase for approximately 680 Parkland Education Association members. The board member explained that the CBA had not appeared on the published agenda because the Parkland Education Association had only voted on the CBA earlier that same day. The School Board approved the motion ("October Vote"), updated the agenda to reflect the addition, and subsequently voted to approve the CBA.

On November 2, 2021, Jarrett Coleman filed suit, arguing that the October Vote violated the Majority Vote Clause. In response, the District filed an answer and counterclaim. Coleman then filed a second complaint after the District ratified the October Vote at its November 16, 2021 meeting ("November Vote").[6] The trial court consolidated Coleman's two cases for discovery and trial, and the District moved for summary judgment. Having determined that the October Vote complied with the requirements of the Majority Vote Clause, the trial court granted summary judgment in favor of the District

---

[6] The November Vote occurred at a regularly scheduled meeting and complied with the Sunshine Act's publication and notice requirements.

with respect to the October Vote, thereby upholding the validity of the CBA.  In its analysis, the court interpreted Section 712.1 to include four autonomous exceptions based on the General Assembly's use of the word "or" in subsection 712.1(a).[7]  Coleman appealed.

**Decision Under Review**

A divided Commonwealth Court reversed, holding that the District violated the Sunshine Act by infringing on the 24-hour Notice Rule and the related prohibition in subsection 712.1(a), rejecting the trial court's "erroneous interpretation" of Section 712.1.[8] *Coleman v. Parkland Sch. Dist.*, 305 A.3d 238, 251 (Pa. Commw. 2023).  The Commonwealth Court discerned an ambiguity in subsection 712.1(a), finding that the word "or" could be conjunctive or disjunctive, making it susceptible to more than one interpretation.  *Id*. at 247.  The court acknowledged that "or" is usually taken in statutes to signal a disjunctive unless it leads to an absurd result.  *Id*. (quoting *Elite Indus., Inc. v. Pa. Pub. Util. Comm'n*, 832 A.2d 428, 431 (Pa. 2003) ("The conjunction 'or' must be given its ordinarily disjunctive meaning unless such a construction would lead to an absurd result.")).  However, the Commonwealth Court reasoned that construing the text "or (e)" in subsection 712.1(a) as a disjunctive would create an absurdity because the General Assembly "intended with the Sunshine Act's pre-meeting posting mandate, *see* 65 Pa.C.S. § 709(c.1)(1), 'to insure the right of its citizens to have notice of ... all meetings of agencies at which any agency business is discussed or acted upon ... .' 65 Pa.C.S. § 702(b)."  *Id.* (internal citation excluded).

Having discerned this "ambiguity" in the meaning of "or" in subsection 712.1(a), the Commonwealth Court resolved that ambiguity by rejecting its disjunctive meaning.

---

[7]  The trial court denied the District's motion with respect to the November Vote, but Coleman ultimately discontinued that suit.

[8]  Nevertheless, the Commonwealth Court upheld the validity of the CBA based on the November Vote.

The court first relied on a single Senator's statement made during his introduction of the 2021 amendment. *Id*. at 247-48. It then buttressed its interpretation by construing the Majority Vote Clause as a mere procedural mechanism for the implementation of the three other exceptions to the prohibition on official action that does not comply with the 24-hour Notice Rule. *Id*. at 248. Specifically, the Commonwealth Court stated:

> [S]ubsections (b), (c), and (d) of [Section 712.1] of the Sunshine Act differ from subsection (e) in that each of the former specify that an "agency may take official action" when the circumstances in subsections (b), (c), and (d) arise, 65 Pa.C.S. § 712.1(b), (c), (d), without mandating how the agency must go about amending the agenda to include those changes. Conversely, subsection (e) describes how the agency may add agency business to the agenda at a meeting, without in any way limiting the situations in which an agency may do so. *See* 65 Pa.C.S. § 712.1(e). In addition, subsection (e) specifies the procedure an agency must follow to amend the agenda during the meeting, making it akin to subsection (f), which specifies the procedure an agency must follow relative to an agenda change after the meeting, i.e., requiring inclusion of the amendment in the meeting minutes. *See* 65 Pa.C.S. § 712.1(f).

*Id*.

Finally, the Commonwealth Court opined that if the Majority Vote Clause is treated as a standalone exception, it would "swallow the entire rule that the agency shall post the agenda 24 hours in advance of a meeting." *Id*. The court reasoned that if the Majority Vote Clause could be invoked in emergencies or for de minimis new business, it would render subsections (b), (c), and (d) of Section 712.1 superfluous. Consequently, the Commonwealth Court held that the Majority Vote Clause is a mere "procedural mechanism" for the invocations of the exceptions defined in subsections (b), (c), and (d). *Id*. at 249.

The Honorable Patricia A. McCullough dissented on this point.[9] She would have held instead that the Majority Vote Clause was "drafted in permissive, not mandatory, terms, and it does not require an item of proposed business to first satisfy the criteria under one of the exceptions [S]ections 712.1(b)-(d). **It is a standalone, remedial exception** that permits the agency to correct whatever caused an item of business to be omitted from the agenda published in accordance with [S]ection 709(c.1)." *Id*. at 254 (McCullough, J., concurring and dissenting) (emphasis in original). Judge McCullough rejected the "academic distinction between 'exclusive' and 'inclusive' disjunctions" and the majority's selective choice of legislative history. *Id*. at 255. She also criticized the conclusion that the Majority Vote Clause renders the other exceptions superfluous, noting that each of the four exceptions "serves a distinct purpose[.]" *Id*. Judge McCullough concluded by observing that the Commonwealth Court majority "offers what otherwise would be a rational method of creating exceptions" to the 24-hour Notice Rule, but that whatever the General Assembly "might have" intended, the court was not "at liberty to overlook the plain wording" of subsection 712.1(a) to arrive at what the court believed the General Assembly "meant to say." *Id*. at 256 (quoting *Vellon v. PennDOT*, 292 A.3d 882, 894 (Pa. 2023) (Mundy, J., concurring) (emphasis omitted)).

---

[9] Judge McCullough otherwise concurred in the result reached by the Commonwealth Court that the trial court correctly determined that the CBA was valid.

## II. Issue

The District filed a petition for allowance of appeal. We granted review on the following issue:

> Did the Commonwealth Court err as a matter of law in finding that Section 712.1 of the Pennsylvania Sunshine Act only provides three (3) exceptions to the requirement that an agency provide 24 hours' notice of an agenda prior to a public meeting, when the clear language of the statute provides for four (4) exceptions?

*Coleman v. Parkland Sch. Dist.*, 318 A.3d 99 (Pa. 2024) (per curiam).

## III. Parties' Arguments

### Appellant Parkland School District

The District maintains that the plain language of Section 712.1 delineates four separate grounds for satisfying the notice requirement. The District argues that by holding otherwise, the Commonwealth Court improperly rewrote subsection 712.1(a) in defiance of the rules of statutory construction.

The District contends that the Commonwealth Court erred in finding that subsection 712.1(a)'s use of the word "or" renders the provision ambiguous. It distinguishes Section 712.1 from cases where ambiguity was found in statutory text, such as *Uniontown Newspapers, Inc. v. Pennsylvania Department of Corrections*, 243 A.3d 19 (Pa. 2020). Unlike *Uniontown*, where this Court found the statute at issue ambiguous because the term "final determination" was used in two different ways within the same statute, the District notes that no such conflicting language or usage exists in Section 712.1, meaning it is not open to multiple interpretations. District's Brief at 16.

The District argues that the Commonwealth Court's interpretation turns "or" into an "and." *Id.* at 15. It maintains that the Commonwealth Court's approach is antithetical to the provision's plain language and writes in conditional dependencies that the General Assembly did not intend. *Id.* at 13-14 (citing *Commonwealth v. Goslin*, 156 A.3d 314, 317

(Pa. Super. 2017) (using "or" signifies that any single element alone is adequate to meet statutory requirements); *Frempong v. Richardson*, 209 A.3d 1001, 1010 (Pa. Super 2019) (same), *appeal denied*, 227 A.3d 313 (Pa. 2020)). The District contends that the legislature explicitly intended to create four distinct exceptions.

The District maintains that, even if Section 712.1 is ambiguous, its legislative history supports a disjunctive reading. It notes that when Senate Bill 554—which would add Section 712.1—was reported out of committee in the House, Senator Stefano described the provision as creating four exceptions to the 24-hour rule,[10] echoing the statute's plain language and confirming that the exceptions operate independently. *See* District's Brief at 12. The District highlights that nothing in the hearing or Senator Stefano's statements implied any limitation or dependency between the four delineated exceptions. Moreover, the District argues that Commonwealth Court's reliance on Senator Stefano's statements before the bill was even introduced are irrelevant. *See id.*

_____

[10] The relevant portion of Senator Stefano's statement reads as follows:

> S.B. 554 by Senator Stefano amends the Sunshine Act to require a public agency to post public meeting agendas at the princip[al] office location of the agency, convening location, and the agency's website, if they have one, no later than twenty-four hours prior to meeting and prohibits an agency from taking official action on items not on the meeting agenda.

> The bill includes some exceptions to this rule. The exceptions are: (1) if the [matter] relates to emergency involving a clear and present danger to life or property;[ ] (2) the [matter] arises twenty-four hours before the meeting and the matter is di minimis and does not involve an expenditure of funds or entering into a contract;[ ] (3) the [matter] arises during the conduct of the meeting, a resident or taxpayer for the purpose of referring the matter to staff for the research;[ ] or (4) the [matter] is voted upon favorably by majority vote of individuals present and voting at a meeting to be added to the agenda.[ ]

Transcript of the Public Hearing Before the H. State Gov't Comm., https://bit.ly/48qD8Sh 05:14:00-06:06:00 (June 22, 2021) (Statement of Sen. Stefano).

at 11 n.3. Accordingly, the District contends that Senator Stefano's pre-legislative comments do not represent the full legislative intent as embodied in the statutory language and thus should not override the statute's clear language that each exception stands alone.

Amici supporting the District include the Pennsylvania School Boards Association, the Pennsylvania State Association of Township Supervisors, and the Pennsylvania State Association of Boroughs (collectively "PSBA Amici"). PSBA Amici contend that the Commonwealth Court essentially rewrote subsection 712.1(a) as follows:

> **(a) Official action.** Except as provided in subsection (b), (c), or (d) ~~or (e)~~, an agency may not take official action on a matter of agency business at a meeting if the matter was not included in the notification required under Section 709(c.1) (relating to public notice) and the agency takes the action required in subsection (e).

PSBA Brief at 14 (deletion indicated with strikethrough, additions indicated by underscoring).

PSBA Amici contend that the court's conclusion that the use of "or" rendered Section 712.1 ambiguous is absurd in its implication that the mere presence of "or" creates ambiguity, effectively undermining the foundational principle that plain language should govern statutory interpretation. *Id.* at 11. PSBA Amici also aver that the Commonwealth Court's assertion—that reading "or" as disjunctive would cause the Majority Vote Clause to "swallow" the other exceptions—is contradicted by Judge McCullough's observation that subsection (e) contains its own procedural safeguards. As Judge McCullough noted, subsection (e) mandates that an agency must follow a specific process when amending agendas, ensuring transparency and accountability. *Id.* at 11-12 (citing *Coleman*, 305 A.3d at n.8 (McCullough, J., concurring and dissenting)).

PSBA Amici further contend that the panel's concern about agencies potentially using subsection (e) to conduct surprise meetings or add unexpected agenda items is

unfounded. In addition to subsection (e)'s procedural requirements that prevent such abuses, PSBA Amici highlight the absence of anecdotal evidence in the record suggesting widespread misuse, despite the thousands of public meetings held across the Commonwealth since Section 712.1(e)'s enactment. They additionally argue that this concern is at odds with this Court's longstanding presumption that public boards act in good faith, adhering to necessary procedural steps to validate their official acts. *Id.* at 12 (quoting *Appeal of Wesenberg*, 31 A.2d 151, 154 (Pa. 1943)). PSBA Amici observe that a fiscal note for S.B. 554 further supports the conclusion that Section 712.1 was intended to delineate four stand-alone exceptions.[11]

<u>Appellee Jarrett Coleman</u>

Coleman maintains that the Commonwealth Court's interpretation of Section 712.1 is consistent with the Sunshine Act's objective to maintain transparency and public

---

[11] The note stated that S.B. 554

> prohibits an agency from taking official action on a matter of agency business at a meeting if the matter was not included in the required notification, except under the following circumstances: (1) it relates to an emergency involving a clear and present danger to life or property; (2) it is de minimis in nature and does not involve the expenditure of funds or entering into a contract or agreement; (3) it is brought to the attention of the agency by a taxpayer at a meeting and the action involves referring the matter to staff for further research; or (4) it is added to the agenda by a majority vote of the individuals present and voting at the meeting, and the reason for the added item is announced before the vote.

PSBA Amici Brief at n.9 (quoting Fiscal Note, S.B. 554, Gen. Assemb., Reg. Sess. (May 20, 2021)).

participation and that reading subsection (e) as an exception would nullify the Act's other provisions and undermine its purpose.[12]

Coleman does not contend that Section 712(a)'s use of the word "or" is ambiguous. Rather, he contends that when read pari materia with the rest of the Act, it becomes clear that the "or" in subsection 712.1(a) should be construed in accordance with its conjunctive meaning and therefore read as "and" because subsection (e) sets forth the following procedural framework for amending an agency's meeting agenda. Before publication of the agenda, agencies have full discretion to list agenda items; between publication and meeting, only de minimis matters without financial impact or contractual commitments may be added; and during a meeting, only certain actions are permissible, such as assigning a matter to staff for future consideration or handling de minimis issues without financial implications. *See* Coleman's Brief at 21-22.

A conjunctive reading, Coleman contends, is further bolstered when considered with subsection (e)(1)'s requirement that the announcement of the reasons for changes to the agenda be taken before voting to amend the agenda. *See id.* at 21-23 (citing *Frempong*, 209 A.3d at 1010 (holding that the word "or" should be read as conjunctive, rather than disjunctive given "the entire context of the statute")). Accordingly, Coleman argues that this construction harmonizes subsection 712.1(a) with the rest of the statute, preserves the Act's government transparency objectives, and is consistent with the rules of statutory construction.

To the extent that the word "or" renders subsection 712.1(a) ambiguous, Coleman contends that it should be read in light of the legislative findings and declaration within 65 Pa.C.S. § 702, which highlight the importance of public transparency in government

---

[12] Coleman spends the initial portion of his brief arguing that the October vote did not satisfy the exceptions in subsections (b), (c), or (d), a matter not considered by this Court. *See* Coleman's Brief at 17-19.

decision-making. He also avers that the Sunshine Act is remedial legislation and must be "liberally construed to effect its objects and to promote justice." Coleman's Brief at 27 (citing 1 Pa.C.S. § 1928(c); *Consumers Educ. & Prot. Ass'n v. Nolan*, 368 A.2d 675, 682 (Pa. 1977)). He contends that this interpretation is also the only one that gives effect to the legislative finding that "the right of the public to witness the deliberation, policy formulation and decision-making of agencies is vital to the enhancement and proper functioning of the democratic process." *Id.* at 23 (quoting 65 Pa.C.S. § 702(a)). He warns that allowing agencies to amend agendas for any reason without prior notice would defeat the public's right to be informed and to participate and that unchecked agenda amendments could erode public trust and foster secrecy, counter to the Sunshine Act's intent. *Id.* at 24.

Coleman also references statements by Senator Patrick Stefano indicating that an agency can only amend agendas for emergencies or minor matters. He contends that this reinforces that the General Assembly intended to limit the ability to circumvent the Act's notice requirements to the exceptions delineated in subsections (b) through (d). He also highlights *Reading Eagle Co. v. Council of Reading*, 627 A.2d 305 (Pa. Commw. 1993), which underscored the requirement for specificity when agencies announce their reason for holding an executive session pursuant to 65 Pa.C.S. § 708(b). Coleman argues that, similarly, the reasons for agenda amendments under subsection (e)(1) must tie back to the reasons provided for under subsections (b) through (d) so the public can ascertain whether the agenda is being properly amended for a legitimate purpose. *See id.* at 25-26 (citing trial court opinions that indicate that agencies cannot take action on items without providing sufficient detail on agendas). Coleman further argues that the District's proposed interpretation would allow unrestricted agenda amendments under subsection (e), effectively nullifying the other exceptions.

The Pennsylvania Senate Republican Caucus (PSRC) filed an amicus curiae brief in support of Coleman.[13] The PSRC contends that the legislative history of S.B. 554 makes clear that amendments to a previously published agenda should be permitted only in the limited circumstances delineated in subsections (b) through (d).  It argues that the District's position that Section 712.1 permits an agency to add to its required previously published agenda—for any reason at all—any matter so long as they obtain a majority vote of the agency to make the change completely undermines the Act's stated policy:

> **(a) Findings.**—The General Assembly finds that the right of the public to be present at all meetings of agencies and to witness the deliberation, policy formulation and decisionmaking of agencies is vital to the enhancement and proper functioning of the democratic process and that secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society.
>
> **(b) Declarations.**—The General Assembly hereby declares it to be the public policy of this **Commonwealth to insure the right of its citizens to have notice of and the right to attend all meetings of agencies at which any agency business is discussed or acted upon** as provided in this chapter.

PSRC Brief at 6 (quoting 65 Pa.C.S. § 702) (emphasis added).

The PSRC highlights the comments made by Senator Stefano before the Senate State Government Committee.  *See* Statement from Senator Patrick Stefano to the S. State Gov't. Comm., 11:19-34:00 (Apr. 27, 2021) ("It does take into consideration emergency situations.  It makes exceptions for those and allows for transparency of those emergency movements and motions to be posted for the public at the next day or so.").  PSRC also notes the Senator's comments before the Appropriations Committee:

---

[13]  Amicus Curiae were the prime sponsor of S.B. 554.

> This bill is an effort to increase government transparency. … There are exceptions in place to provide for instances of emergency business or other scenarios. While all of these exemption[s] exist for good reason, it is crucial that the public still be informed. Therefore, any item added to the agenda as an emergency business or other exemption must be added to the meeting minutes to reflect the substance of the matter.

Transcript of the Meeting to Consider S.B. 554 Before the S. Appropriations Comm., 15:39:00-15:43:00, 16:08-27:00 (June 7, 2021). PSRC also cites Senator Stefano's comments to the media.[14]

Amici, the Pennsylvania Newsmedia Association and ACLU of Pennsylvania (collectively "ACLU Amici") filed a joint brief supporting Coleman. ACLU Amici argue that the remedial intent of the Sunshine Act amendments mandates a liberal interpretation favoring public knowledge and input. They contend this approach aligns the Sunshine Act with its sister statute, the Right-to-Know Law (RTKL),[15] which is construed to ensure government accountability and public engagement. Through this lens, ACLU Amici contend that subsection (e), the Majority Vote Clause, serves as a procedural mechanism to facilitate democratic engagement, rather than a loophole for unannounced, substantive agenda additions that might limit public participation. ACLU Amici Brief at 7 (citing *Consumers Educ. and Protective Ass'n v. Nolan*, 368 A.2d 675, 681 n.4 (Pa. 1977) (observing that "adequate notice to the public at large is an integral part of the public-

---

[14] *See* PSRC Brief at 12-13 (quoting Senator Stefano in Taylor Brown, *New Law Strengthens State's Sunshine Act*, MON VALLEY INDEPENDENT, July 3, 2021 ("The public had no idea because the agenda was not made available[, a]nd I know there were members of the public who wanted to have input into that decision."); Jonathan Guth, *Stefano Says His Work is Not Done*, BEDFORD GAZETTE, Nov. 3, 2022 (explaining that S.B. 554 grew from a school board meeting in which the hiring of a superintendent did not become public knowledge until the position had been filled)); *see also id.* at 11 (citing *Commonwealth v. Wilson*, 602 A.2d 1290, 1294 n.4 (Pa. 1992) (stating that statements of legislators "may properly be considered as part of the contemporaneous legislative history")).

[15] Act of Feb. 14, 2008, P.L. 6, 65 P.S. §§ 67.101-3104.

meeting concept; a meeting cannot be deemed to be public merely because its doors are open to the public if the public is not properly informed of its time and place")).

Finally, the Commonwealth Foundation also filed an amicus brief in support of Coleman. It asserts that an expansive construction of Section 712.1, particularly the collective bargaining context, is necessary to protect taxpayer interests, ensure accountability, and counterbalance the political power of public-sector unions.[16] It contends that this interpretation aligns with the Sunshine Act's purpose to combat secrecy and uphold public confidence in democratic governance as the public would have a greater opportunity to understand and engage with the decisions that impact them, reinforcing the democratic values of openness and accountability.

## IV. Analysis

### A.

The plain text of Section 712.1 is unambiguous and creates four freestanding exceptions to the general prohibition that an agency cannot take official action on items not listed on the pre-meeting agenda pursuant to the 24-hour Notice Rule. In holding otherwise, the Commonwealth Court essentially redrafted Section 712.1 to align it with a textually unsustainable view of the ostensible spirit of the Sunshine Act and its 2021 amendment. With this decision, we reaffirm that the text of an unambiguous statute, and not its alleged spirit, defines its purpose and meaning.

We review matters involving statutory interpretation de novo with a plenary scope of review. *Mimi Invs., LLC v. Tufano*, 297 A.3d 1272, 1284 (Pa. 2023). "The principal objective of statutory interpretation is to give full effect to the General Assembly's intent."

---

[16] *See* Commonwealth Foundation's Brief at 17 (noting that in 2023, PSEA was the third largest school board endorser with 131 endorsees, eighty-two of which won a seat) (citing *Endorsements in Pennsylvania School Board Elections*, Ballotpedia (2023), https://bit.ly/3CjNVSh).

*Id*. (citing 1 Pa.C.S. § 1921(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly.")).  To ascertain the General Assembly's intent, we "first and foremost" examine "the explicit text of a statute." *Id*. (citing *Commonwealth v. Griffith*, 613 Pa. 171, 32 A.3d 1231, 1235 (2011) (stating "the best indication of legislative intent is the plain text of the statute")).

When ascertaining the meaning of a statute's text, we construe the statute's terms, "if possible," in such a manner as "to give effect to all its provisions."  *Id*. § 1921(a) ("Surplusage Rule").  We are obligated to construe those words "according to rules of grammar and according to their **common** and approved usage[.]" 1 Pa.C.S. § 1903(a) (emphasis added).  When the statutory text is "clear" and unambiguous, we are prohibited from disregarding it "under the pretext of pursuing its spirit."  1 Pa.C.S. § 1921(b).

At issue is the use of the term "or" in subsection 712.1(a).  *See* 65 Pa.C.S. § 712.1(a) ("Except as provided in subsection (b), (c), (d) **or** (e), an agency may not take official action on a matter of agency business at a meeting if the matter was not included in the notification required under section 709(c.1) (relating to public notice).") (emphasis added).  It is undisputed that subsection 712.1(a) imposes a prohibition on taking "official action on a matter of agency business" if the 24-hour Notice Rule is not satisfied unless an exception applies.  Utilizing its plain disjunctive meaning,[17] the use of the term "or" in this context indicates that there are four exceptions to the prohibition set forth in subsections (b) through (e).  *See In re Paulmier*, 937 A.2d 364, 373 (Pa. 2007), *as clarified* (Dec. 28, 2007) (stating that the word "or" is a conjunction that is "used to connect words, phrases, or clauses representing alternatives" and, therefore, is "disjunctive" because it

---

[17]  This Court adopted a rule in *Elite Industries* addressing the rare case when "or" does not take its common disjunctive meaning, recognizing that the common meaning of "or" is disjunctive, and that we only deviate from that clear meaning when it "would lead to an absurd result."  *Elite Industries*, 832 A.2d at 431.

"means one or the other of two or more alternatives"); *see also Or*, WEBSTER'S II DICTIONARY (3d ed. 2005) (stating the term "or" is used "to indicate … [a]n alternative"). Nothing on the face of subsection 712.1(a) suggests that the rare, conjunctive meaning of "or" was intended. Our rules of statutory construction dictate, therefore, that we apply the far more common, disjunctive meaning of the term. 1 Pa.C.S. § 1903(a). Read with an eye for its common definition (unadulterated by hypotheses about rare non-disjunctive meanings at the outset), subsection 712.1(a) plainly sets the stage for the rest of Section 712.1, where we expect to find four exceptions delineated in subsections (b) through (e), not one exception divided into four parts or three exceptions and a procedural mechanism.

The Commonwealth Court accurately summarized its scope and standard of review and the general boilerplate rules for statutory construction. *Coleman*, 305 A.3d at 245-46. It further acknowledged that the term "or" ordinarily takes its disjunctive meaning. *Id*. at 246. Nevertheless, the court then determined that because subsection 712.1(a) "is capable of two meanings," it "must look beyond the statute's words to determine the General Assembly's intent." *Id*. at 247. That was error. Nothing on the face of subsection 712.1(a) suggests the rare conjunctive meaning of "or" was intended by the legislature. To the contrary, commensurate with Section 1903(a), we must assume the General Assembly intended the far more common disjunctive meaning for the term "or" in that provision. Thus, we hold that Section 712.1 creates four standalone exceptions delineated in subsections (b) through (e).

**B.**

Nothing in the text of Section 712.1 that follows subsection 712.1(a) undermines the expectation established therein that there are four exceptions to the general rule prohibiting action on agency business that did not satisfy the 24-hour Notice Rule. The

Commonwealth Court held that subsections (b) through (f) are best read as three exceptions set forth in subsections (b), (c), and (d), with procedural requirements set forth in subsections (e) and (f). *Id*. at 248-49. It reasoned that if subsection (e) (the Majority Vote Clause) is a standalone exception, it would swallow the exceptions set forth in (b), (c), and (d) in violation of the Surplusage Rule. We disagree. As explained below, the exceptions in subsections (b), (c), and (d) are not rendered superfluous by reading the Majority Vote Clause as a standalone exception.

The first exception, subsection (b), involves emergency business concerning "a clear and present danger to life or property **regardless of whether public notice was given for the meeting.**" 65 Pa.C.S. § 712.1(b) (emphasis added). Such business might well have been known to the agency before the 24-hour agenda deadline, but as the provision makes perfectly clear, the existence of a clear and present danger supersedes the general prohibition set forth in subsection 712.1(a) that enforces the 24-hour Notice Rule. Nothing in this emergency business exception suggests that a majority vote is required to consider emergency business, even as a majority vote is obviously required to resolve it. Nor does anything in the text of that provision indicate that the pre-meeting agenda must be amended to reflect action on emergency business.[18] To the contrary, the agenda is immaterial to the operation of subsection (b), as clearly stated in the text from that provision as highlighted above.

The second exception, subsection (c), concerns circumstances in which the agency may address de minimis business not listed on the agenda. 65 Pa.C.S. § 712.1(c). It has two subparts separated by the conjunction "and," meaning that both

---

[18] We note that, pursuant to Section 706, the minutes will reflect any action taken on emergency business. *See* 65 Pa.C.S. § 706(3) ("Written minutes shall be kept of all open meetings of agencies. The minutes shall include: … (3) The substance of all official actions and a record by individual member of the roll call votes taken.").

elements must be met to invoke this exception.[19]  First, the at-issue business must arise or be brought to the agency's attention "within the 24-hour period prior to the meeting[.]" *Id*. § 712.1(c)(1).  In other words, the de minimis exception cannot be invoked if the agency was aware of the de minimis business before the meeting agenda had to be posted pursuant to the 24-hour Notice Rule.  Second, the matter must be "de minimis in nature," and cannot "involve the expenditures of funds or entering into a contract or agreement by the agency." *Id*. § 712.1(c)(2).  Like the first exception, this exception does not require a majority vote to consider the de minimis business but would obviously require a majority vote to resolve it, and it neither requires nor prohibits retroactive amendment of the agenda.  And like the first exception, any decision on de minimis business will be reflected in the mandatory publication of the meeting's minutes pursuant to Section 706.  *See* 65 Pa.C.S. § 706(3).  However, the second exception is constrained temporally by the timing of when the ostensibly de minimis business was brought to the agency's attention.

The third exception concerns only business that was "not listed on the meeting agenda" that arises "**during** the conduct of a meeting" and was raised by "a resident or taxpayer[.]" *Id*. § 712.1(d) (emphasis added).  For such business, the agency is expressly permitted to take limited action including referral of the matter to staff. *Id*.  Or, if the matter "is de minimis in nature and does not involve the expenditure of funds or entering into a contract or agreement, the agency may take official action… ." *Id*.  Like both prior exceptions, this exception does not require a majority vote to consider the new business, although it requires a majority vote to refer it for future consideration at a subsequent meeting or to decide the de minimis business.  Nor does this exception require retroactive

---

[19]  This also indicates that within Section 712.1, the General Assembly consistently used "and" conjunctively, and "or" disjunctively.

modification of the agenda, though any action will be memorialized in the minutes pursuant to Section 706(3).

Thus, under the first three exceptions, an agency is permitted to take official action under the circumstances described without any requirement to retroactively modify the meeting's agenda for post hoc publication by majority vote. Two of the exceptions are subject to narrow time constraints that concern circumstances when inclusion on an agenda is impractical. Subsection 712.1(c) can only be invoked when the agency learns of the new business in the twenty-four hours **prior** to the meeting. Subsection 712.1(d) can only be invoked for business brought to the agency's attention **during** a meeting. Subsection 712.1(b) has no time constraint; it permits the agency to take official, emergency action when the matter involves a clear and present danger to life or property regardless of when the agency became aware of the matter.

The fourth exception, the Majority Vote Clause (subsection (e)), is the broadest exception. Its applicability is not constrained by time restrictions like those imposed under subsections (c) and (d), nor does it require that the new matter involve a true emergency like subsection (b). The Majority Vote Clause is also not constrained by whether the new business is an emergency or involves a de minimis matter that does not impact the financial obligations of the agency. However, the Majority Vote Clause's breadth is cabined by different constraints.

To invoke the Majority Vote Clause, the agency must conduct a wholly separate vote from that which decides the new business, and the "reasons for the changes to the agenda shall be announced at the meeting before any vote is conducted[.]" 65 Pa.C.S. § 712.1(e)(1). Only if that vote is successful may the agency then "take official action on the matter added to the agenda." *Id*. When the agency successfully invokes the Majority Vote Clause, it must post the amended agenda "on the agency's publicly accessible

Internet website, if available, and at the agency's principal office location no later than the first business day following the meeting at which the agenda was changed." *Id*. And there is more. When "a matter of agency business [is] added to the agenda[,]" that is, when the Majority Vote Clause is successfully invoked, subsection (f) mandates that "the minutes of the meeting shall reflect the substance of the matter added, the vote on the addition and the announced reasons for the addition[,]" a degree of specificity not otherwise required under Section 706.[20] *Id*. § 712.1(f). All of these additional requirements reflect, rather than contradict, the General Assembly's obvious interest in having agencies publish their agendas before a meeting. When an agency chooses to invoke the Majority Voting Clause, it must do so transparently during the meeting by a wholly separate vote from the vote that decides the new matter.

Subsection (f) of Section 712.1 provides special requirements for the agency meeting's minutes when "action is taken upon a matter of agency business added to the agenda under this section[.]" 65 Pa.C.S. § 712.1(f). The only exception requiring retroactive amendment of a pre-meeting agenda required by the 24-hour Notice Rule is the Majority Vote Clause. *See* 65 Pa.C.S. § 712.1(e)(1).

Just as predicted by subsection 712.1(a) through its use of the common disjunctive meaning of the term "or," the statute subsequently describes, in subsections (b) through (e), four standalone exceptions to subsection 712.1(a)'s prohibition. This understanding of Section 712.1 flows directly from its plain terms.

**C.**

Subsection (f) works in tandem with the Majority Vote Clause to mandate additional transparency requirements not otherwise required under the first three exceptions. If an

---

[20] Under Section 706, there is no requirement that the minutes reflect the reasons why a matter was added to an agenda. *See* 65 Pa.C.S. § 706.

emergency arises, or if de minimis business arises when it is impossible to have included it in the agency meeting's agenda under the 24-hour Notice Rule, the agency may act on that business without any requirement to retroactively amend the agenda. If, however, the agency deems it necessary to act on business that is neither an emergency nor de minimis, it must conduct a wholly separate vote to retroactively amend the pre-meeting agenda, notify the public of the substance of the new matter, note the reason(s) why it was added to the agenda retroactively, and publish the votes of the agency members who decided to invoke the Majority Vote Clause. In that way, Section 712.1 both reinforces the importance of the 24-hour Notice Rule and provides for accountability through transparency when the rule is circumvented by that exception. Contrary to the holding below, the breadth of the Majority Vote Clause does not render any of the other exceptions redundant.[21]

---

[21] The exception-swallowing-the-rule logic embraced by the Commonwealth Court makes little sense when, in emergencies and de minimis matters, the agency is incentivized by the General Assembly to avoid invoking the Majority Vote Exception because of those additional burdens. No exception is redundant when "or" is afforded its common disjunctive meaning, because each exception has different criteria and burdens for their implementation. The Commonwealth Court was uncomfortable with the breadth of the Majority Vote Clause as a standalone exception when juxtaposed against a romanticized version of the Sunshine Act and its 2021 amendment. But to reject the plain text of Section 712.1 based on a perceived inconsistency with the purported purposes of the statutory scheme puts the proverbial cart before the horse. The purpose of Section 712.1 is found in its unambiguous text, not in preconceptions imported by the reader (even if well-intentioned) about what an ideal notice provision under the Sunshine Act should look like.

We resolve this matter solely based on the plain text of Section 712.1. However, we observe that the exceptions to Section 712.1's prohibition serve different purposes than the prohibition. Indeed, **they are exceptions** that reflect important countervailing interests to the general rule. Nonetheless, because the text of Section 712.1 is unambiguous, we need not consider arguments as to whether its text offends the ostensible spirit of the Sunshine Act or is contrary to some interpretations of the legislative history of the 2021 amendment.

**D.**

Finally, we observe that the Commonwealth Court's construction of Section 712.1, whereby the Majority Vote Clause is viewed only as a procedural mechanism applicable to the exceptions set forth in subsections 712.1(b) through (d), cannot flow from the term "or" taking on its rare conjunctive meaning. If we simply replace "or" with "and" in subsection 712.1(a), the text of Section 712.1 would dictate that subsections 712.1(b) through (e) collectively comprise one exception to the prohibition on official action described in subsection 712.1(a). Such a construction would require that a new matter not included on the pre-meeting agenda could only be addressed if it is a de minimis emergency that requires no expenditure of funds, that arises both within the twenty-four hour period before a meeting and during the conduct of the meeting, and is raised by a resident or taxpayer during the meeting, all in addition to the requirements of the Majority Vote Clause. Consequently, in resolving the purported ambiguity in subsection 712.1(a), the Commonwealth Court did far more than simply apply the rare conjunctive meaning to "or" in subsection 712.1(a). Instead, it effectively rewrote subsection 712.1(a) to read, "[e]xcept as provided in subsection (e) as applied to subsections (b), (c), or (d), an agency may not take official action[,]" or something to that effect. That interpretation requires both textual and structural changes to the plain text of the statute well beyond simply applying an alternative meaning to the word "or" in subsection 712.1(a). All of this is avoided by simply applying the plain meaning of "or" to subsection 712.1(a), which is precisely what our rules of statutory construction require in this instance. If the General Assembly intended something different from what is expressed in that plain text, it is free amend the statute.

## V.  Conclusion

Subsection 712.1(a) generally prohibits an agency from taking official action on agency business at agency meetings without public notification under the 24-hour Notice Rule established in Section 709(c.1).  However, subsection 712.1(a) also establishes four standalone exceptions delineated in subsections 712.1(b)-(e).  Thus, we reverse the decision of the Commonwealth Court and reinstate the trial court's order granting the District's motion for summary judgment.

Justices Dougherty and Mundy join the opinion.

Justice Brobson files a concurring opinion and joins Parts I-III, IV.A, IV.D, and V.

Chief Justice Todd files a dissenting opinion.

Justice Wecht files a dissenting opinion in which Justice McCaffery joins.